

**Signed and Filed: September 19, 2025**

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>      - and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>      Reorganized Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and<br>    Electric Company<br>☒ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case<br>No. 19-30088-DM<br><br>Chapter 11<br><br>Jointly Administered |
| WILLIAM B. ABRAMS,<br><br>      Plaintiff,<br><br>v.<br><br>PG&E CORPORATION; PACIFIC GAS AND ELECTRIC COMPANY,<br><br>      Defendants. | Adversary Proceeding<br>No. 25-03027-DM |

**MEMORANDUM DECISION REGARDING MOTION TO DISMISS**

I. **INTRODUCTION**

On January 29, 2019, PG&E Corporation and Pacific Gas and Electric Company ("Debtors") filed chapter 11 to deal with claims for damages arising out of devasting and destructive wildfires that took place in 2015, 2017, and 2018 (the "Wildfires"). Those Wildfire caused tens and thousands of dollars in injuries and tens of billions of dollars in damages. On July 12, 2019, Governor Newsom signed AB 1054 into law, which essentially gave Debtors a deadline to satisfy prepetition claims from the Wildfires by June 30, 2020. If Debtors did not meet that deadline, they were not eligible to participate in the California Wildfire Fund (the "Fund"), a mechanism established by AB 1054 and AB 111 (signed into law at the same time) to deal with future wildfires. That legislation provided no relief for the damages caused by the Wildfires.

The expectation of the court, the principal participants in the Chapter 11 effort, the representatives of the fire claimants, and the vast majority of the claimants themselves, was that the Debtors' transfer of $13.5 billion in cash and securities to the new created Fire Victims Trust ("the FVT") would result in an anticipated recovery of one hundred percent (100%) of the direct (not subrogation) claims of the victims of the Wildfires. This expectation has not been realized. Whether it was a greater number of Wildfires claims, more expensive costs of administering the FVT, excessive attorney's fees, or the performance of the stock contribution to the FVT, or other factors, the final estimates pegged the net recovery at no

better than seventy percent (70%), leaving a shortfall of at least thirty percent (30%).

William B. Abrams ("Abrams"), a 2017 Tubbs Fire victim, acting pro se and without an attorney, has emerged as a passionate advocate for Wildfires victims. Abrams filed the adversary proceeding to unravel the Debtors' Chapter 11 Plan that created the FVT, claiming that the Plan was confirmed via a fraud on Plan voters. For the reasons set forth below, he does not present any cognizable claim for relief and his Amended Complaint (Dkt. 7) must be dismissed without leave to amend.[1]

## II. BACKGROUND

On June 20, 2020, the court confirmed *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* (Dkt. 8048) (the "Plan"). The court's Confirmation Order was entered on June 20, 2020 (Dkt. 8053).

Pursuant to the Plan, the FVT was created to administer, process, settle, resolve, liquidate, satisfy and pay the claims arising out of the Wildfires ("Wildfire Claims") (other than claims of public entities and those based upon subrogation principles). Abrams and tens of thousands of others asserting Wildfire Claims were affected by creation of the FVT, as all their claims were channeled to the FVT for adjudication and resolution, independent of Debtors, who received broad

---

[1] Docket numbers that have more than two digits are in the main Chapter 11 cases; those with one or two digits are in the adversary proceeding.

-3-

discharges of all liabilities dealt with under the Plan pursuant to Section 1141(a).[2]

Debtors funded the FVT by channeling to it cash and securities of a value totaling approximately $13.5 billion. The Wildfire Claims were the subject of a channeling injunction that established the FVT as the sole source of recovery for the holders of those Wildfire Claims; Wildfire Claimants would have no recourse against the discharged Debtors. Those holders were "permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction or recovery from any Debtor or Reorganized Debtor." Plan, § 10.7(a); Confirmation Order, Para 53(a).

In his initial Adversary Proceeding Complaint, filed on June 17, and his Amended Complaint (Dkt. 7) filed on July 8, 2025 ("Complaint"), Abrams named as defendants Debtors, the FVT, and others associated with them. On July 21, 2025, Abrams filed a Notice of Certain Dismissal of Certain Defendants (Dkt. 47) in which he dismissed all defendants other than Debtors.

At a hearing on September 9, 2025, the court heard oral argument on the Motion to Dismiss Adversary Proceeding ("Motion") filed by Debtors (Dkt. 76), the Abrams' Opposition (Dkt. 92) and the Debtors' Reply (Dkt. 96).[3]

---

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

[3] Also at the hearing, Abrams indicated that the court still had not ruled on his prior Motion to Stay Adversary Proceeding (Dkt. 35). The text of the order entitled "ORDER DENYING MOTION TO STAY ADVERSARY PROCEEDING" (Dkt. 85), sets forth and addresses

-4-

For the reasons that follow, the court rejects Abrams' attempts in this court and wishes him and others well in other efforts before other legislative or administrative bodies. His Complaint must be denied, without leave to amend.

**III. DISCUSSION**

In an introductory paragraph of his Complaint, Abrams states that he "seeks redress for a pattern of statutory, constitutional, and fiduciary breaches surrounding the procurement and following the confirmation of the "Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020" (the "Plan") [Dkt. 8048]. The Plan purported to resolve fire victim claims through the creation of the Fire Victim Trust, promising timely and fair compensation." (Amended Complaint, 3:22-26).

He complains that the FVT was marred by structural and financial conflicts of interest, withheld and redacted financial disclosures, improper and mismanaged liquidation of Debtors' equity, denial of individualized due process rights, and willful and fraudulent conduct "by key actors before, and after during Plan Confirmation." (Amended Complaint, 4:4-5).

Under a main heading titled "Background: Pattern of Fraud, Willful Misconduct and Post-Confirmation Inequity", Abrams alleges the Debtors' corporate misconduct and criminal history;

---

the full title of Abrams' Motion, namely, "Motion to Stay Adversary Proceeding Pending Assignment of Counsel for Plaintiff and the Proposed Class Given Defendants Posture and Recent Actions filed by Plaintiff William B. Abrams". No further order is necessary so none will be issued.

-5-

Case: 25-03027    Doc# 104    Filed: 09/19/25    Entered: 09/19/25 14:19:16    Page 5 of 16

a Fire Victim Trust bait and switch; fiduciary breaches and deviations from Plan terms; fraud in Plan solicitation and confirmation; post-confirmation conduct and failure to remedy harm; concealment of conflicts; suppression of oversight; and victims being undercompensated and continually harmed as a result thereof.

Finally, Abrams introduces what he calls "Factual Allegations and Causes of Action" and asks that the court note seven enumerated instances that involved pre-confirmation or pre-disclosure statement conduct, alleged conflict by a secured creditor and lender, grievances about the actions of the Tort Claimant Committee, statements made by the United States Trustee, influence of a plan component alleged by various insiders, and post-confirmation's document manipulation, without specific attribution.

These allegations then segue into eight enumerated counts seeking relief.

Rather than confine Abrams to the eight enumerated claims in his Complaint, the court will discuss additional theories he advances to justify prosecution of this adversary proceeding. Those theories were argued in detail at the September 9, 2025 hearing and are discussed in order after dealing with the eight specific courts. They are, third party releases, plausibility of the allegations contained in the Amended Complain, the impact or inapplicability of res judicata, and law of the case, the exculpation provisions of Section 10.8 of the Plan, and the impact of the California tort statute of limitations.

### A. The Counts Alleged in Abrams' Complaint

The first Count is Fraudulent Inducement (Common Law Fraud). In a series of subparagraphs, Abrams alleged false representations of facts and omissions attributable to Debtors' officers, attorneys and agents made during the bankruptcy case, within CPUC proceedings, and elsewhere, including representations regarding the $13.5 billion funding of the FVT as insufficient, that the value of the PG&E stock contributed to the FVT would be quickly rise when in fact Debtors knew that stock was volatile and there was no likelihood of quickly rising in value. He contends further that Debtors knew that the representations were false and misleading and that they chose to rely on an overly optimistic and incomplete picture to ensure support for the Plan. He goes on to contend that he and others similarly situated "justifiably relied" on Debtors' representations and omissions and this resulted in damages. Elsewhere in the same count, he contends that these assertions were not related to any fire and thus fell outside of the FVT purview. He contends that Debtors' conduct was "willful, malicious and in conscious disregard of the fire victims' rights and that that conduct should give rise to punitive and exemplary damages." (Amended Complaint, 22:4-5). Finally, he reiterates objections he filed on May 15, 2020 as part of an objection to confirmation of the Plan. (Dkt. 7230).

The Confirmation Order and its finality, and the operation of Section 1141 are dispositive. Abrams is bound by the Plan. There is no exception to the broad discharge of Debtors under the Order Confirming Plan and Section 1141. *See, e.g., United*

-7-

*Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010) (confirmation order containing components that did not comply with other parts of Code was still binding); *Trulis v. Barton*, 107 F.3d 685, 691 (9th Cir. 1995) ("Once a bankruptcy plan is confirmed, it is binding on all parties and all questions that could have been raised pertaining to the plan are entitled to res judicata effect").

On top of that, and even without regard to the Confirmation Order, these various representations even if fraudulent, and even if actionable, are barred by the California statute of limitations of three years for fraud. Even more to the point, there is no particularity for such a contention as required by Fed. R. Bankr. P. 9(b), incorporated by Fed. R. Civ. P. 9(b).

The first Count must be dismissed.

The second Count is for Willful Misconduct through Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing. Abrams contends that the Plan and Confirmation Order constituted a binding contract, that Debtors materially breached their contractual obligations, and then doing so they violated the implied covenant of good faith and fair dealing.

While there is settled bankruptcy policy that treats a plan as a contractual relationship between the debtor and the creditors, this Count alleges that key obligation such as funding the FVT and assignment various claims against third parties resulted in contractual obligations that Debtors materially breached by undermining stock value, implementing the Plan in bad faith, imposition of undisclosed liquidity

-8-

restrictions and breach of the implied covenant of good faith and fair dealing.

Over five years have elapsed since the Plan was confirmed and before Abrams filed his adversary proceeding, and apart from the broad discharge of Section 1141 and the permanent discharge injunction under Section 524, this Count, under Abrams' own breach of contract theory, would be barred by California's 4-year statute of limitations on written contracts. Cal. Code Civ. Proc. § 337. Further, the Count does not plead any specific expressed or implied terms of the Plan that could constitute a breach of a covenant of good faith and fair dealing as it acknowledges that Debtors did pay the aggregate FVT consideration of $13.5 billion as required under Section 4.26(a) of the Plan.

The second Count must be dismissed.

The third Count is entitled Declaratory Judgement and Equitable Relief, contending that the discharge and release provisions of the Plan and Confirmation Order do not provide relief due to fraud, willful misconduct and material breach. To repeat, Section 1141 is all-encompassing, and includes torts not discharged in individuals' bankruptcies and specifically subject to the permanent injunction of Section 524. The channeling injunction provides the same protection for the Debtors, and since Debtors fully complied with their obligations to the FVT, Abrams or any other Wildfires victims individually cannot assert breach of the Plan or invoke traditional fraud and willful misconduct theories under the rubric of declaratory judgement.

The third Count must also be dismissed.

-9-

The fourth Count, Breach of Fiduciary Duty and Constructive Fraud, appears directed at the FVT, the Trust Oversight Committee, and affiliated professionals. Abrams dismissed his Complaint against all those parties. He does not allege any new theories of liability under this Count against Debtors, and his dismissal of all other defendants is all that needs to be noted to support dismissal of this Count as to Debtors.

The fifth Count erroneously invokes a misunderstanding of third-party releases and confusion between them and exculpation clauses. The court dealt directly with Abrams when it denied his similar and previous request on May 2, 2024 (Dkt. 14438) and his confusion between the Purdue Pharma bankruptcy and the Ninth Circuit treatment of exculpation clauses in *Blixseth v. Credit Suisse,* 961 F.3d 1072 (9th Cir. 2020).

The fifth Count must be dismissed.

The sixth Count, Securities Violations Including Unauthorized Securitization and Misrepresentations of Claim Value, does not state any theory of liability as to Debtors or any claim by Abrams that he is the victim of any securities violations. He earlier attempted to refer to the litigation between Debtors and Baupost Group Securities LLC (Dkt. 13440) but offers no theory of liability under this Count and appears to repeat the eye-catching words of that separate ongoing litigation without tying the substance of that litigation to himself as a plaintiff or how it applies to Plan solicitation, Confirmation, and execution.

The sixth Count must be dismissed.

The seventh Count alleges a post confirmation material alteration of FVT structure. Abrams contends that the FVT was materially altered post-confirmation, claiming a violation of due process and disclosure obligations under Section 1125(b) among other theories[4]. He concedes that Debtors and the FVT brought a joint motion on April 25, 2021 (Dkt. 10497) which sought authorization for an exchange transaction, that that transaction was challenged by one fire victim, but not Abrams, and that the court approved that transaction by an order dated April 29, 2021 (Dkt. 10598). Given the final disposition of that matter over four years ago, the lack of any appeal thereafter, the running of the 180-days to seek revocation of a Plan under Section 1144, there is no actionable claim for relief available.

The seventh Count must be dismissed.

The eighth Count alleges violations of Sections 1125(b) and 1126(e), both covering improper solicitation and conflicts in connection with a restructuring support agreement approved years and years ago and prior to Confirmation. For the same reasons recited as to the seventh Count, it is too late to revisit the matters and this Count fails.

For the foregoing reasons, the eighth Count must be dismissed.

In this circuit, courts are directed to permit liberally amended pleadings in the interest of giving litigants the opportunity to present the merits of their contentions rather

---

[4] Section 1125(b) deals with post-petition and pre-confirmation matters only, and has no relevance to post-confirmation matters.

than dismiss them at the pleading stages. None of the eight Counts discussed above can be salvaged, so amendment would be futile. Given the extensive efforts of Abrams as presented by the Complaint, the court will discuss his other arguments in his efforts to save the Complaint

**B. <u>Abrams' Additional Theories</u>**

**Third-Party Releases**

Abrams has devoted some energy and effort to challenge what he believes are third-party releases, as those instruments have been recently disapproved by the United States Supreme Court in the highly publicized Purdue Pharma bankruptcy. He apparently believes that somehow confirmation of the Plan here violated what is now the law of the land under the Purdue Pharma decision. He is incorrect.

In the Ninth Circuit, third-party releases have been prohibited for decades. In this very case, the court had extensive discussions with counsel and parties about this issue before Confirmation, independently reviewed the Plan and other critical documents, and determined that there were no impermissible third-party releases anywhere. Third-party releases generally benefit non-debtors who get the benefit of the discharge of their common debtor, which Abrams correctly notes the Supreme Court recently limited in *Harrington v. Purdue Pharma, L.P.*, 144 S.Ct. 44 (2023). No third-party release was part of the Plan or the Confirmation Order here. The only possible confusion would come about by Abrams's possible misunderstanding of exculpation clauses. They are provisions that release parties such as the FVT, the Trust Oversight

-12-

Committee and others who have played a role in the bankruptcy process, and against some of whom Abrams leveled his charges prior to dismissing them as parties. These exculpation clauses are specifically permitted in the Ninth Circuit under *Blixseth v. Credit Suisse*, 961 F.3d 1074 (9th Cir. 2020). Such clauses are operative to this day, will operate in the future and protect those many parties who played a role in the Debtor's reorganization, Plan, and the Confirmation Order, Debtors' discharge and the Channeling Injunction.

**Plausibility**

At the hearing, Abrams took issue with Debtors' contention that even taking all facts alleged by Abrams as true, as the court does at the pleading stage the claims for relief stated by Abrams are still not plausible. The court takes no issue with Debtor's argument and agrees. "Under Rule 12(b)(6), '[o]nly when the plaintiff pleads itself out of court,' by admitting all the elements of an affirmative defense, may a complaint that otherwise states a claim be dismissed." *Scheibe v. ProSupps USA, LLC*, 141 F.4th 1094, 1098 (quoting *Durnford v. MusclePharm Corp.*, 907 F.3d 595, 603 n.8 (9th Cir. 2018)).

In other words, even accepting all facts as true, a legal impediment is fatal and plausibility must be denied as a matter of law if an affirmative defense that is plain on the face of the complaint applies. Such a claim is simply not a cognizable claim that can survive the pleading stage. As noted above, and below, there are many applicable affirmative defenses asserted by the Debtors that are plain on the face of the Amended Complaint.

-13-

**Res Judicata and Law of the Case**

The court has already addressed the preclusive effect of plan confirmation *supra*. The Confirmation Order, and all its components, constitutes a binding final order, "and precludes the raising of issues which could or should have been raised during the pendency of the case." *See Trulis v. Barton*, 107 F.3d 685, 691 (9th Cir. 1995); *Heritage Hotel Ltd. Partnership I v. Valley Bank (In re Heritage Hotel Ltd. Partnership I)*, 160 B.R. 374, 377, *Aff'd without op.*, 59 F.3d 175 (9th Cir.1995).

The issues raised by Abrams in the Amended Complaint could have been, or actually were raised prior to confirmation (See Dkt. 7230).

Like the binding effect of the Confirmed Plan, Abrams is also bound by the law of the case doctrine. "Under the law of the case doctrine, a court is barred from reconsidering an issue that already has been decided in the same court or in a higher court in the same case." *FDIC v. Kipperman (In re Commer. Money Ctr., Inc.)*, 392 B.R. 814, 832 (*citing Milgard Tempering, Inc. v. Selas Corp. of America*, 902 F.2d 703, 715 (9th Cir. 1990).

**Exculpation**

In his Opposition to the Motion to Dismiss, and during the September 9 hearing, Abrams argued that the exculpation clause found in Section 10.8 of the Plan encompasses the Debtors and does not exculpate specific torts, including fraud and willful misconduct[5]. That Debtors are included in this exculpation

---

[5] Section 10.8 narrowly carves out "except for Claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct…"

-14-

clause as well as the broadest definition of discharge pursuant to Section 1141 and the Confirmation Order is not necessarily an inconsistency, but perhaps inartful drafting. And while it is a well-settled maxim that an ambiguous writing must be construed against the drafters, the court cannot conclude that the exculpation clause overrides or undermines the broader protections of the Sections 1141 and 524 and the channeling injunction, and provide another layer of discharge to the Debtors that may not have been available to the other parties named in the exculpation clause of Section 10.8.

Finally, even if narrow exception to Section 10.8 did apply to conduct of the Debtors, there are absolutely no specifics as required by Rule 9(b) and none have been pled within the three-year timeframe mandated by California law.

**Statute of Limitations**

As the court noted *supra*, Abrams various allegations are otherwise barred by the California statute of limitations of three years for fraud.

**IV. CONCLUSION**

For the foregoing reasons, the Motion to Dismiss will be GRANTED.

The court is concurrently issuing an order dismissing this adversary proceeding without leave to amend for the reasons stated in this Memorandum Decision.

**\*\*END OF MEMORANDUM DECISION\*\***

<u>COURT SERVICE LIST</u>

William B. Abrams
625 McDonald Ave.
Santa Rosa, CA 95404